```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA


STEPHEN L. LAFRANCE HOLDING    :    CIVIL ACTION
INC., et al.,                  :
                               :
           v.                  :
                               :
NATIONAL MILK PRODUCERS        :
FEDERATION, et al.             :    NO. 12-70
```

MEMORANDUM

McLaughlin, J.                                      July 31, 2012

This case is a putative class action of direct purchasers of milk products in which the plaintiffs claim that they purchased those products at supracompetitive prices. The plaintiffs allege that the defendants,[1] which are trade associations and dairy cooperatives, engaged in a "herd retirement" scheme designed to reduce the supply of raw farm milk and increase its market price. The defendants have moved to transfer this action to the United States District Court for the Northern District of California, asserting that the case should be consolidated with three cases pending there that involve substantially similar allegations. The Court will grant the defendants' motion.

---

[1] The defendants are National Milk Producers Federation, Cooperatives Working Together, Dairy Farmers of America, Land O'Lakes, Inc., Dairylea Cooperative Inc., Agri-Mark, Inc., Prairie Farms Dairy, Inc., Turner Dairy Holdings, LLC, and Hiland Dairy Foods Company, LLC.

I.   Facts and Procedural Background[2]

The plaintiffs are Stephen L. LaFrance Holding Inc., a holding company that owns retail drug stores, and its wholly owned subsidiary, Stephen L. LaFrance Pharmacy, Inc., which purchases and sells fluid milk and other fresh dairy products. Their corporate offices are located in Pine Bluff, Arkansas. They filed this action on behalf of themselves and a class of others similarly situated. Am. Compl. ¶¶ 23-24, 113.

The plaintiffs allege that from 2003 to 2010, the defendants, through an unincorporated association called Cooperatives Working Together ("CWT"), induced dairy farmers to prematurely remove dairy cows from production in exchange for cash payments funded by dues the cooperatives paid to CWT. The "purpose and effect" of the herd retirement program was to "artificially inflate the price paid by direct purchasers of fluid milk products and other fresh dairy products . . . ." Am. Compl. ¶¶ 1, 3-5. They bring a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.

At the time the complaint in this action was filed, three other cases were pending against the same defendants in the

---

[2] The facts in this section are drawn, where undisputed, from the allegations of the Amended Complaint in this action and the evidence submitted in support of the Motion to Transfer. The plaintiffs' opposition brief did not include any declarations or documentary evidence.

Northern District of California (the "California Actions").[3] Those cases are indirect purchaser class actions; the plaintiffs in those cases are individual consumers and non-profit corporate purchasers of milk. The plaintiffs in the California Actions allege that the defendants inflated the price of raw farm milk through coordinated herd retirements, resulting in increased prices of "milk and other fresh milk products" at the consumer level. They bring claims for unjust enrichment and under a variety of state antitrust and unfair competition laws. First Am. Class Action Compl. at ¶¶ 9-10, 34-37, 120-48, Edwards v. Nat'l Milk Producers Fed'n, No. 11-4766 (N.D. Cal. Oct. 28, 2011).

       The California Actions were consolidated before Judge White in the Northern District of California for all purposes by stipulation of the parties and approval by that court. Stipulation and Order to Consolidate Cases and Combine Briefs and Aggregate Page Limitations, Edwards v. Nat'l Milk Producers Fed'n, No. 11-4766 (N.D. Cal. Dec. 19, 2011).

       The plaintiffs in this action moved the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate the case with the California Actions, asserting that all four cases "arise out

---

[3] The California Actions are Edwards v. Nat'l Milk Producers Fed'n, No. 11-4766 (N.D. Cal.); Robb v. Nat'l Milk Producers Fed'n, No. 11-4791 (N.D. Cal.); Boys & Girls Club of the East Valley v. Nat'l Milk Producers Fed'n, No. 11-5253 (N.D. Cal.).

of the same conduct and make similar claims." Pls.' Mot. for Transfer & Coordination of Related Actions to the E.D. Pa. Pursuant to 28 U.S.C. § 1407 ¶ 1, MDL No. 2340 (Jan. 10, 2012). The defendants responded by supporting centralization of the actions but requested that it be done in the Northern District of California. The JPML denied the motion, asserting that given the limited number of actions, creating a MDL was not necessary. Order Denying Transfer, In re Fresh Dairy Prods. Antitrust Litig., MDL No. 2340 (J.P.M.L. Apr. 17, 2012).

The defendants moved to dismiss the claims against them in the California Actions, asserting, among other things, that the Capper-Volstead Act, 7 U.S.C. § 292, renders their conduct immune from antitrust liability. A hearing was scheduled on that motion for July 27, 2012. Judge White vacated the hearing and granted the plaintiffs leave to amend in the California Actions based on their assertion that they could present additional allegations of predatory conduct. Order Regarding Amended Complaint, Edwards v. Nat'l Milk Producers Fed'n, No. 11-4766 (N.D. Cal. July 19, 2012).

On June 18, 2012, the defendants also moved to dismiss the complaint in this action, largely based on the same arguments presented to Judge White in the California Actions. The Court denied that motion as moot when the plaintiffs filed their amended complaint. Order of July 17, 2012 (ECF No. 68).

II. <u>Analysis</u>

The defendants move under Section 1404(a) to transfer the action from this Court to the United States District Court for the Northern District of California, asserting that it is a more convenient forum. The factors relevant to 1404(a) transfer counsel in favor of transferring the action to that court.

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[4] The Court is to consider the factors enumerated in the statute as well as several additional private and public interest factors. <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879-80 (3d Cir. 1995).[5]

---

[4] The parties do not dispute that venue would be proper in the Northern District of California because a substantial portion of the events or omissions giving rise to this claim occurred there. <u>See</u> 28 U.S.C. § 1391(b).

[5] The plaintiffs misstate the standard applicable to the instant motion, asserting that the one articulated in <u>In re United States of America</u>, 273 F.3d 380, 387 (3d Cir. 2001) governs here. That case involved a dispute over a motion to transfer a criminal action under Fed. R. Crim. P. 21(b), and the ten factors the Court of Appeals considered appropriate on such motions were drawn from <u>Platt v. Minnesota Mining & Mfg.</u>, 376 U.S. 240 (1964). Although the <u>In re United States</u> court noted the similarities in Section 1404(a) and Criminal Rule 21(b)--both refer to party and witness convenience--transfer in the instant case is governed by the factors articulated in <u>Jumara</u>. The Court addresses the plaintiffs' arguments under the <u>Platt</u> factors where they are relevant to the <u>Jumara</u> analysis.

The private interest factors that a court considers include:

> [1] [The] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (internal citations omitted). The public interest factors include:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted). The defendant bears the burden of proving that transfer is needed. Id.

    A.    Private Interest Factors

The first private interest factor is neutral or weighs slightly against transfer. Although a plaintiff's choice of forum is generally accorded deference, where a plaintiff is not resident in the forum, that choice is entitled to less weight,

particularly where the events giving rise to the litigation did not occur in the forum. The plaintiffs here do not allege that they purchased milk in Pennsylvania or that they purchased milk that came from Pennsylvania. They are Arkansas entities without a clear connection to the Eastern District of Pennsylvania. Their choice of forum is thus accorded less deference.

The defendants' preferred forum is the Northern District of California, as evidenced by the instant motion and the defendants' opposition to the JPML Motion to Transfer, which also requested consolidation of the California Actions with the instant case in that forum. Interested Party Resp. of Defs.' to Pls.' Mot. for Transfer & Coordination of Related Actions to the E.D. Pa. Pursuant to 28 U.S.C. § 1407 at 1, MDL No. 2340 (Feb. 1, 2012). The second factor thus favors transfer.[6]

The third factor also favors transfer. Whether herd retirements, the coordination thereof, or the purchase of raw milk products is viewed as the basis for the plaintiffs' claims

---

[6] The plaintiffs argue in opposition that given the location of corporate headquarters of the defendants and of their counsel, it would be more inconvenient for the defendants to litigate in San Francisco than in Philadelphia. Even accepting this for purposes of the motion, the plaintiffs' argument overlooks the fact that the defendants and their counsel already are litigating in San Francisco in the California Actions, and therefore any added inconvenience would be marginal. But see 15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure §§ 3849-50 (3d ed. 2007) (where both parties are nonresidents, party convenience given "considerably less emphasis"; similarly, counsel convenience "given very little weight").

here, California has a greater connection to the factual nexus of this action. The defendants have produced evidence related to the six herd retirements preceding the filing of the complaint in this matter, from 2008 to 2010.[7] Of the herd retirements in those years, California retirements represented 27.7% of the total, while Pennsylvania retirements represented 1.9%. Also during that period, of the twenty-two meetings regarding CWT held by the National Milk Producers Federation, one took place in California, none took place in Pennsylvania, and the remainder took place by telephone or in Virginia, Nevada, Colorado, Illinois, Texas, or Tennessee. Decl. of Thomas M. Balmer, Exec. Vice Pres., Nat'l Milk Producers Fed'n at Exs. A-B, Defs.' Mot. Ex. 5. The claims in this matter thus arose largely outside of this district.

The parties do not present evidence of their relative financial conditions and so the fourth factor is neutral.

The defendants present substantial evidence that the witnesses likely to testify in this matter--largely employees of the defendants--would be inconvenienced by having to travel to Philadelphia to testify in addition to having to testify in the California Actions, and that most of these witnesses, in addition to the defendants' books and records, are located outside of Pennsylvania. Defs.' Mot. 18-19 & nn.17-19. These factors are

---

[7] No herd retirements were conducted in 2011 or 2012.

properly considered in the discussion of public interest factors below, but do not affect the fifth or sixth private interest factors, which are only relevant if witnesses or books and records are unavailable in one forum or the other.  The fifth and sixth private interest factors are, therefore, neutral.

B.   Public Interest Factors

The movants concede that the public interest factors regarding judgment enforceability, public policy, and familiarity with the relevant law are neutral, and the plaintiffs do not dispute that characterization.  The remaining public interest factors favor transfer.

Substantial practical considerations, including judicial efficiency and the avoidance of duplicative proceedings, counsel in favor of transfer.  These factors are particularly important here because each of the three cases consolidated in the Northern District of California was filed before the instant one and involve substantially the same subject matter.[8]  The

---

[8] The movants urge that the interests of justice counsel that the Court invoke the "first-filed rule" to grant the motion to transfer.  Although the typical posture of cases implicating the first-filed rule involves a request to enjoin a related proceeding in another district court, the rule has been invoked to transfer actions involving the same subject matter as an earlier filed action.  See, e.g., Transcore, L.P. v. Mark IV Indus. Corp., No. 09-2789, 2009 WL 3365870, at *4 (E.D. Pa. Oct. 15, 2009); Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009); Advanta Corp. v. Visa U.S.A., Inc., No. 96-7940, 1997 WL 88906, at *2-*3 (E.D. Pa. Feb. 19, 1997) (citing EEOC v.

California Actions allege the same behavior on the part of the defendants and will therefore require similar discovery.  In the California Actions, the defendants have challenged the subject matter jurisdiction of the court, asserting (as they asserted here with respect to the initial complaint) that the Capper-Volstead Act vests the Secretary of Agriculture with exclusive jurisdiction over the dispute.  Resolving these issues together will be more efficient and inexpensive than resolving them in separate fora because they will involve testimony from many of the same witnesses and will permit the defendants to challenge the claims brought against them in a single forum.

        The plaintiffs argue that because the claims in the California Actions are state law claims and the plaintiffs are indirect purchasers, the cases are "entirely different" and transfer is not warranted.  This argument is unpersuasive because, as the defendants point out, many of the state law claims made in the California Actions are brought under statutes explicitly modeled on the federal antitrust statutes and interpreted in the same way.  See Defs.' Reply at 5 & nn.10-11 (collecting statutes).  Given Judge White's recent order permitting the filing of an amended pleading with the expectation

---

Univ. of Pa., 850 F.2d 969, 970 (3d Cir. 1988)).  Although the Court's ruling here is made under Section 1404(a), the policies behind the first-filed rule, including avoiding duplicative litigation, suggest that transfer is appropriate.  See EEOC v. Univ. of Pa., 850 F.2d at 972.

that it would be challenged in the same way as the prior pleadings (and in the same way as the original complaint was challenged here), the procedural posture of the California Actions will permit the efficient resolution of this action along with the pending ones.

The movants also argue that the differences in court congestion between this forum and the proposed transferee forum favor transfer. The defendants point out that this Court has the highest number of filings per judge and the sixth highest number of pending cases per judge, and that the proposed transferee forum ranks twenty-fifth and twenty-ninth in those categories.[9] Mot. 14-15 (citing United States Courts, Fed. Court Mgmt. Statistics (Sept. 2011), available at http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2011/District FCMS Profiles September 2011.pdf (last visited July 30, 2012)). The defendants acknowledge that "weighted filings per judge," which incorporates the average amount of time required to resolve the filings pending in a district, is greater in the Northern District of Cailfornia than here. These statistics are subject to competing interpretations regarding court congestion,

---

[9] The plaintiffs argue that the JPML rejected congestion arguments in denying the defendants' motion to consolidate the cases as a multidistrict litigation. This argument neglects the fact that the standards for transfer under Section 1407 and Section 1404 are different. See, e.g., In re Am. Fin. Corp. Litig., 434 F. Supp. 1232, 1234 (J.P.M.L. 1977) (Noting that "different considerations . . . underlie these two statutes").

and the Court considers this factor as neutral on the instant motion.

The defendants assert that California has a strong local interest in deciding the case as the nation's largest dairy-producing state. The plaintiffs respond that Pennsylvania has a substantial interest in deciding the case because Pennsylvania is fifth in total milk production and fourth in total number of cows. The allegations of this case, however, are national in character and involve conduct affecting consumers of dairy products in all states; the case cannot be characterized as a "local controversy." The fourth factor is thus neutral.

The public interest factors favor transfer on the whole. The California Actions remain in the pleading stage, raise near-identical factual issues concerning the conduct of the defendants, and are challenged as a threshold matter in the same way. It would be expeditious to transfer this case to the Northern District of California to conserve the resources of the parties, witnesses, and the judiciary.

An appropriate order will issue separately.